(No. 19810.

Lois E. Huber, Appellant, *vs.* Mary E. Williams *et al.*—
(James E. McCreight, Exr., Appellee.)

*Opinion filed February 21, 1930.*

314

LEE E. MANNON, and WALTER L. MANNON, for appellant.

VIRGIL C. LUTRELL, and JAMES A. ALLEN, for appellee.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Lois E. Huber filed an amended bill in the circuit court of Mercer county for the reformation of a deed, the confirmation in herself of the title to the lots alleged to have been conveyed by the deed, and for the construction of the residuary section of the last will of James M. Poe, deceased. The heirs, legatees and devisees of the decedent and James E. McCreight, the executor of his will, were made defendants. The executor filed an answer denying the material allegations of the bill, and a cross-bill charging the non-delivery of the deed. The complainant answered the cross-bill. The defaults of the other parties were entered and the cause was referred to a master in chancery who, after hearing the evidence, made a report recommending a decree in conformity with the prayer of the amended bill. The executor's objections to the master's report were

overruled and stood as exceptions before the chancellor. The exceptions were sustained and the court by its decree declared that the deed had never been delivered, that it was null and void and should be canceled of record. From that decree, the complainant prosecutes this appeal.

James M. Poe, a widower, about seventy years of age, owned lots 14, 15 and 16, in block 18, in Sheppard and Ford's addition to the village of Viola, in Mercer county. The lots were improved by a house in which he resided. Lois E. Huber, the appellant, was a school teacher. On September 23, 1926, Poe executed a deed by which he purported to convey to the appellant lots 16 and 17 in block 18 of the same subdivision. He did not own lot 17. The consideration for the deed was recited to be, first, one dollar, the receipt of which was acknowledged; second, the payment by the grantee to the grantor of ten dollars per month, without interest, until the money paid aggregated six hundred dollars, with the proviso that in the event of the grantor's death prior to the payment of the maximum fixed, the obligation to pay the installments thereafter accruing should be canceled, and third, the financial and other assistance which the grantee had theretofore rendered the grantor. The grantor reserved possession of the premises for such period as he should personally occupy them, and he agreed to pay all the taxes and to maintain the insurance upon the premises during the same period. The deed also contained the recital that it was a voluntary conveyance on the part of the grantor and that it was not sought but only consented to by the grantee. Poe executed a will simultaneously with the deed. By this will he bequeathed and devised his estate, save certain specific legacies, to the appellant. Five days later, on September 28, 1926, Poe executed another will drawn at his request by a justice of the peace. He revoked the former one, and, after the bequest of certain legacies, devised and bequeathed by this will, as construed by the circuit court, the residue of his

estate to Charles W. Poe and the appellant in equal parts. Poe died on November 8, 1926. His last will was admitted to record by the county court of Mercer county and letters testamentary thereon were issued to James E. McCreight, the appellee. Since both parties acquiesce in the circuit court's construction of the residuary section of this will, no further attention need be given to it.

Of the two lots described in the deed, Poe owned only one, namely, lot 16. Appellant seeks to establish the delivery of the deed and asks its reformation so that the description will include lots 14 and 15. She testified, in substance, as follows: Poe and the appellant were not related but he had been a friend of her parents for a number of years and often called at their home in the city of Rock Island. She had sold him books while she was a student in college and had been well acquainted with him since the year 1919. In the summer of 1926, he visited appellant's brother at her father's farm. Prior to September of that year, she had lent Poe sums of money amounting to forty dollars. On September 23, 1926, he called at her home, and stating that he needed money, asked her to purchase his house and lots in Viola. She told him she did not desire the property, but.if he could raise money by no other means, she would take it. On that day she accompanied him to the office of Andrew L. Chezem, an attorney in Davenport, Iowa, who represented her family. After introducing Poe to attorney Chezem she departed, to do some shopping. The attorney drew the deed and a will and upon her return read them .to Poe and herself. She understood the conditions of the deed but left the attorney's office with Poe without indicating whether she would assent to them. On October 2, 1926, she gave Poe twenty dollars for which he signed an instrument written by her acknowledging the receipt of the money "as a loan or to be applied on contract when accepted." Twenty-eight days later she remitted ten dollars to Poe by a money order which was "to be applied

on the deed" if she accepted it. She neither saw nor heard of the deed from the time it was executed until after Poe's death, and so far as she knew he might have taken the deed from the attorney's office. After Poe's death she thought she would not receive any money so she sought attorney Chezem's advice by a letter. He answered that she should record the deed. She remitted ten dollars in payment of the services rendered by him in drawing the deed and will and requested him to mail the deed to her at Harvey, in Cook county, where she was teaching school. Chezem complied with her request and she caused the deed to be filed for record on May 11, 1927.

Andrew L. Chezem, the attorney, testified that on September 23, 1926, the appellant and Poe came to his office; that Poe said he wanted to convey all his property in Viola to the appellant in consideration of certain payments to be made by her during his lifetime, not exceeding, however, six hundred dollars in the aggregate; that he also requested the witness to draw his will in which the appellant should be the residuary legatee and devisee; that he drew both instruments as directed and Poe executed them; that appellant expressed her satisfaction with the deed but was reluctant to accept the residue of Poe's estate under his will; that the witness asked fifteen dollars for his services whereupon Poe told him he had no money and that the appellant would pay him; that she refused to defray the charge and told the witness to put the papers in his desk; that he answered he would hold them if she did not pay him, and that in the spring of 1927, after Poe's death, she remitted ten dollars in payment of his services and he sent the deed and will to her.

The appellee, James E. McCreight, testified that he had been acquainted with Poe about fifteen years; that before he qualified as executor, Chezem and the appellant called at the Viola State Bank where Chezem told him that the witness had been nominated executor of Poe's will, that the

estate was small and since he, Chezem, represented the appellant that it would save expense if the executor too would retain him; that the witness told Chezem he might not qualify as executor but if he did he preferred to have an attorney of his acquaintance represent him; that on the same occasion the appellant stated that Poe had asked her to purchase the property but that she did not have any money and refused to do so; that afterwards, about the time he qualified as executor, he met Chezem in the court house at Aledo where the latter delivered to him certain papers pertaining to the decedent's personal estate and, exhibiting the deed in question, remarked: "This deed isn't any good, and if you will shoot square with us in this deal we will not use it; otherwise we will record the deed;" that on the same occasion Chezem further remarked that the deed was ineffective because it had never been delivered and the appellant had not complied with its provisions. The witness further testified that Poe occupied the property at the time of his death; that appellant had never had possession of it and that he, the executor, had leased it to tenants.

James A. Allen, one of the attorneys for the executor, testified that he was present at the conference with Chezem and McCreight in the court house at Aledo; that Chezem said the deed had been left in his possession but that it was of no value because the appellant had not made the payments to Poe as required and that the deed might as well be destroyed or given to the executor or the witness. Both answered that they did not care for the deed and Chezem retained possession of it.

The primary question to be determined is whether the deed executed by Poe was delivered to the appellant. The delivery of a deed is an essential part of its execution and is indispensable to render it operative as a conveyance. In determining whether there has been a delivery the intention of the grantor is the controlling factor. A delivery may

be made by acts without words, by words without acts, or by both words and acts, and anything which clearly manifests the grantor's intention that the deed becomes operative and effectual, that he loses control over it and that the grantee becomes possessed of the estate, constitutes a sufficient delivery. (*Deitz* v. *Deitz,* 295 Ill. 552; *Scott* v. *Cornell,* 295 id. 508; *Nofftz* v. *Nofftz,* 290 id. 36; *Little* v. *Eaton,* 267 id. 623; *Hill* v. *Kreiger,* 250 id. 408.) In the case of an ordinary deed of bargain and sale it is indispensable, whatever means may be adopted to accomplish its delivery, that the deed pass beyond the dominion and control of the grantor, since both the grantor and the grantee cannot have control of the deed at the same time. *Hill* v. *Kreiger, supra; Provart* v. *Harris,* 150 Ill. 40.

A deed is delivered as an escrow where it is deposited with a third person to be delivered by him to the grantee only upon the performance or fulfillment of some condition. The deed is not operative to convey the title until the happening of the event upon which the grantee becomes entitled to the possession of the deed. (*Fitzgerald* v. *Allen,* 240 Ill. 80; *Stone* v. *Duvall,* 77 id. 475.) When that event occurs the delivery by the person holding the instrument will constitute delivery to the grantee. (*Struve* v. *Tatge,* 285 Ill. 103.) The death of the grantor or the grantee in the meantime will not defeat delivery by the custodian where the condition upon which the deed was deposited has been fully performed. (*Selby* v. *Smith,* 301 Ill. 554; *Hudson* v. *Hudson,* 287 id. 286.) A grantee, however, claiming under a deed not in his possession at the grantor's death has the burden of proving delivery. (*Selby* v. *Smith, supra; Scott* v. *Cornell, supra.*) The fact that a deed was not in the possession of the grantee until after the grantor's death, but was, at the time of the latter's death, in the possession of a third person, makes a *prima facie* case against the delivery of the deed even though the third person afterwards delivered it to the

grantee. If there was, in fact, a delivery of the deed to the grantee by reason of its deposit with the third person as an escrow upon condition, it is incumbent upon the grantee to overcome the *prima facie* case against delivery by showing the terms of the condition and its complete performance. *Selby* v. *Smith, supra; Scott* v. *Cornell, supra.*

The evidence in the present case fails to show a delivery of the deed at any time prior to the grantor's death. Nor was the deed deposited with Chezem, the attorney, as an escrow, for he testified that he retained it because his charge for drawing it had not been paid. Appellant admitted that she had neither seen nor heard of the deed from the time it was executed until after Poe's death and that, so far as she knew, he might have taken it from the attorney's office. Her first thought after receiving information of his death was not that she was entitled to the deed, but that the money which she had lent him might not be repaid. She sought Chezem's advice and he told her to record the deed. After she had settled his claim, the assertion of which led him to withhold the deed, he forwarded it to her and she filed it for record on May 11, 1927, more than six months after the grantor's death. Notwithstanding the advice Chezem had given the appellant to record the deed, he later told the executor that the deed was of no value because it had never been delivered. In view of these facts and circumstances, the conclusion that the deed was never delivered necessarily follows.

Generally speaking, as applied to persons capable of contracting, a delivery is only complete upon acceptance of the conveyance by the grantee. (*Sellers* v. *Rike,* 292 Ill. 468; *Little* v. *Eaton, supra; Hill* v. *Kreiger, supra.*) The acceptance of a deed of voluntary settlement which is beneficial to the grantee and imposes no burden upon him will ordinarily be presumed even though the grantee had no knowledge of the existence of the deed until after the grantor's death. (*Little* v. *Eaton, supra; Baker* v. *Hall,*

214 Ill. 364.) If, however, the deed creates a liability against the grantee or imposes an obligation upon him an acceptance cannot rest upon a presumption but must be of an affirmative character. (*Hill* v. *Kreiger, supra; Thompson* v. *Dearborn,* 107 Ill. 87.) Where the facts neither show an actual acceptance nor justify a presumption of law that the deed has been accepted, the title does not pass. *Hill* v. *Kreiger, supra.*

The deed, by its terms, imposed upon the grantee an obligation to pay a maximum of six hundred dollars. Appellant admits that she left attorney Chezem's office after Poe had signed the deed without indicating whether she would assume that obligation. Nine days later, on October 2, 1926, she gave Poe twenty dollars which, by a receipt in her handwriting, she designated "as a loan or to be applied on contract when accepted." The subsequent remittance of ten dollars, on October 30, 1926, was likewise, at her election, either a loan or a payment on account of the consideration for the deed. If there had been an acceptance of the deed in Poe's lifetime, these remittances would have been made in reduction of the obligation imposed by the deed, and the appellant would not have had occasion, after his death, to be concerned about, nor would she have been entitled to, the re-payment of the money as in the case of a loan made to him. Moreover, by the terms of the deed, Poe's early death would cancel the unpaid portion of an obligation which if he lived long enough would attain the maximum fixed. Appellant could not be permitted to delay the acceptance of the deed until after Poe's death when acceptance would not involve the assumption of the obligation upon which the conveyance was conditioned and which in his lifetime she refused to assume. The evidence not only fails to establish the delivery of the deed, but it also fails to show its acceptance by the grantee.

The recital in the deed that it was a voluntary conveyance on the part of the grantor does not change its char-

acter. The instrument was not a voluntary settlement beneficial solely to the grantee for it sought to impose an obligation upon her. The recital, it is apparent, had reference to the initiation of the proposal for a conveyance rather than to the character of the instrument. Creating a liability against the grantee an affirmative acceptance was necessary. Wanting in the essentials of delivery and acceptance the instrument was void and could not be reformed.

The decree of the circuit court is affirmed.

*Decree affirmed.*