FAIRBURY FEDERAL SAVINGS AND LOAN ASSOCIATION, Plaintiff-Appellant, *v.* BANK OF ILLINOIS IN NORMAL, Trustee, *et al.*, Defendants-Appellees (Tedd Meyer *et al.*, Defendants; National Bank of Bloomington, Intervenor).

Fourth District   No. 4—83—0296

Opinion filed March 26, 1984.

William C. Wetzel, of Livingston, Barger, Brandt & Schroeder, of Bloomington, for appellant.

W. Loren Thomson and Kevin P. Fitzgerald, both of Thomson, Weintraub & Thompson, of Bloomington, for appellees Paul Oates and Kathryn Oates.

JUSTICE TRAPP delivered the opinion of the court:

Plaintiff brought this foreclosure action as a result of an alleged violation of the due-on-sale clause in defendant's mortgage. Defendant Bank of Illinois in Normal (Bank) was the borrower under the mortgage in its capacity as legal trustee in Land Trust No. BC-1. After an evidentiary hearing and filing of authorities by the various parties to litigation, Judge Knecht entered an order against plaintiff. Plaintiff's

motion to vacate the judgment was denied after argument. Plaintiff appeals from the judgment of the circuit court of McLean County. We affirm.

McLean County Land Trust No. BC-1 was established on November 7, 1972, with the Bank as legal trustee and Banill Corporation as owner of the beneficial interest. On May 19, 1976, Banill Corporation assigned all of its beneficial interest in the land trust to Sharon Meyer. Sharon Meyer then signed a note with the Bank and executed a collateral assignment of her beneficial interest in this land trust to the Bank of Illinois to secure the indebtedness. On September 9, 1976, Tedd Meyer, Sharon Meyer's husband, executed an assignment of his beneficial interest in this land trust to Sharon Meyer. A second tract of land was added to Land Trust No. BC-1.

The mortgage which gave rise to this litigation was entered into on December 10, 1976. The Bank executed a note to plaintiff, a Federal savings and loan association, for $122,800, secured by a 20-year mortgage executed that date. The mortgage instrument lists the mortgagor-borrower as the Bank, as trustee under the provisions of McLean County Land Trust No. BC-1. Paragraph 17 of the mortgage, the due-on-sale clause, states:

"17. Transfer of the Property; Assumption. If all or any part of the Property or an interest therein is sold or transferred by Borrower without Lender's prior written consent, excluding (a) the creation of a lien or encumbrance subordinate to this Mortgage, (b) the creation of a purchase money security interest for household appliances, (c) a transfer by devise, descent or by operation of law upon the death of a joint tenant or (d) the grant of any leasehold interest of three years or less not containing an option to purchase, Lendor may, at Lendor's option, declare all the sums secured by this Mortgage to be immediately due and payable."

The accompanying note was executed by the Bank in its capacity as trustee, with Tedd and Sharon Meyer signing as guarantors. The mortgage was recorded.

On May 1, 1978, Sharon Meyer entered into a contract for deed with defendants Paul F. and Kathryn M. Oates for the real estate which was the subject of Land Trust No. BC-1. The contract for deed was secured by an agreement for warranty deed-deed in escrow arrangement.

On May 2, 1978, Sharon Meyer wrote to the Bank as trustee on Land Trust No. BC-1, directing the Bank to convey the property to the Oates upon completion of the terms of the contract for deed arrange-

ment. She further directed the Bank to draw and sign a trust deed, sign the revenue declaration sheet, and hold these documents in escrow along with the contract for deed.

Under the terms of Meyer's contract with the Oates, the buyers were to pay the full remaining balance of the purchase price of $240,000 by May 1, 1979. The Meyer-Oates contract set forth options under which the Oateses could extend the time for payment in full as late as May 1, 1981. Apparently plaintiff was not notified of the contract for deed agreement or of the agreement for warranty deed-deed in escrow arrangement. Rather, plaintiff learned thereof upon receipt of an insurance policy on the property taken out by the Oateses.

Plaintiff sent Meyer an agreement under which plaintiff would consent to the transaction. This agreement included terms increasing the interest rate on the loan, requiring payment of a service charge for each of the "three years that the contract has to run," and a term requiring payment of the mortgage in full at the end of the three-year period. The Bank refused to sign the agreement with this "balloon" term. Plaintiff was aware of the Bank's position. A substitute agreement was signed by Meyers and the Bank and returned to plaintiff. The substitute agreement did not include the "balloon term," or any term reducing the 20-year period within which the mortgage was to be paid. The substitute agreement was received and read by plaintiff. Plaintiff made no objection to the substitute agreement, and accepted payment of the increased interest rate, the service charge and mortgage payments through May 1981. When the loan was not fully paid in May 1981, plaintiff refused to accept further payments and notified defendants it would seek foreclosure. Payments were subsequently placed into an escrow account.

Judge Knecht entered an order on December 21, 1982, finding as follows:

> "1. The assignment of a beneficial interest in a land trust does not trigger a due on sale clause. The only interest Sharon Meyer could transfer was that of a beneficial interest in a land trust.
>
> 2. Any transfer or transfers that did occur did not violate the due on sale clause in Fairbury's mortgage.
>
> 3. It would be inequitable to permit Fairbury to assert the violation, if any existed.
>
> 4. Fairbury accepted the terms of the agreement proposed by the Meyers in 1978 which omitted the three year balloon and there has been no default on that agreement."

The court denied plaintiff relief.

On January 13, 1983, plaintiff filed a motion to vacate the judg-

ment order on the ground that the trial court was prohibited from interfering with its enforcement of the due-on-sale clause by reason of the presumption doctrine as enunciated in *Fidelity Federal Savings & Loan Association v. de la Cuesta* (1982), 458 U.S. 141, 73 L. Ed. 2d 664, 102 S. Ct. 3014. The trial court concluded that *de la Cuesta* did not preempt a State court from finding that no sale or transfer cognizable under the due-on-sale clause of the mortgage had occurred. The court further found that plaintiff had accepted the terms of the substitute agreement proposed by the Meyers and could not renege on that agreement. The judge denied plaintiff's motion.

Plaintiff's position on appeal is that the agreement for warranty deed-deed in escrow arrangement violated the due-on-sale clause of the mortgage because the Bank, as legal trustee, in fact, *executed* a deed which purported to transfer the property to the Oateses. Plaintiff argues that the fact that the Bank held the deed pending completion of the terms of the contract for deed is not controlling, but that the *execution of the deed* itself triggered the due-on-sale clause. In support of its position, plaintiff's counsel referred the court at oral argument to joint exhibit No. 6 as the deed from the Bank to the Oateses.

■ Examination of joint exhibit No. 6 shows that this deed has not, in fact, been executed by the Bank as trustee. Rather, the portions to be signed and notarized in execution are blank. The document reflects that attorney Thomas J. Loveless, who represented Sharon Meyer, prepared the instrument by typing in a description of the land trust property and other general information on November 7, 1978. Examination of the record reveals no deed executed by the Bank. As the trustee's deed was not executed by the Bank, but merely held in its files, and given the plain language of the mortgage, we conclude that the due-on-sale clause was not triggered as the borrower had not sold or transferred any interest in the property.

■ Under Illinois law, the land trust is an arrangement under which pursuant to statute (Ill. Rev. Stat. 1981, ch. 29, par. 8.31), legal and equitable title to real property is held by the trustee and the interest of the beneficiary is personal property. (*First National Bank v. Oldenburg* (1981), 101 Ill. App. 3d 283, 427 N.E.2d 1312; *Wachta v. First Federal Savings & Loan Association* (1981), 103 Ill. App. 3d 174, 430 N.E.2d 708.) Thus, while the beneficiary may be interested in the terms by which the property of the trust is sold, if the nature of the Illinois land trust is to be preserved, the powers of the beneficiary and the trustee must be kept distinct. (*Madigan v. Buehr* (1970), 125 Ill. App. 2d 8, 260 N.E.2d 431; *Schneider v. Pioneer Trust & Savings Bank* (1960), 26 Ill. App. 2d 463, 168 N.E.2d 808.) Mere delivery of a

deed into escrow does not convey title when the conveyance is contingent upon the occurrence of an event which entitles the grantee to possession of the deed. *Huber v. Williams* (1930), 338 Ill. 313, 170 N.E. 195; *Johnson v. Wallden* (1930), 342 Ill. 201, 173 N.E. 790; *Hirschberg v. Russell* (1943), 317 Ill. App. 329, 45 N.E.2d 886.

■ We agree with the trial judge that nothing in *de la Cuesta* prohibits a State trial court from making the determination required in this case, *i.e.*, whether the underlying transaction was such as to trigger the due-on-sale clause under the plain language of the mortgage. We note that in *de la Cuesta* the appellees had essentially purchased from the appellant's borrowers and, in so doing, took subject to the deeds of trust held by the appellant. Under California law, the positions of the parties to a trust deed differ from those of parties to an Illinois land trust. Under California law the legal title is conveyed to the trustee solely for the purpose of security, leaving in the trustor or his successors a legal estate in the property, as against all persons except the trustees and those holding under them. The trustor is treated as the holder of legal title. *MacLeod v. Moran* (1908), 153 Cal. 97, 94 P. 604; *Hamel v. Gootkin* (1962), 202 Cal. App. 2d 27, 20 Cal. Rptr. 372.

The Supreme Court regarded the underlying transaction in *de la Cuesta* as *outright transfers of security property.* (*Fidelity Federal Savings & Loan Association v. de la Cuesta* (1982), 458 U.S. 141, 170-71 n.24, 73 L. Ed. 2d 664, 686 n.24, 102 S. Ct. 3014, 3031 n.24.) In *de la Cuesta*, the Supreme Court found that Federal regulations governing due-on-sale clauses in mortgage instruments issued by Federal savings and loan associations barred application of the rule of *Wellenkamp v. Bank of America* (1978), 21 Cal. 3d 943, 582 P.2d 970, 148 Cal. Rptr. 379, against such associations. *Wellenkamp* limited exercise of due-on-sale clauses to those cases where the lender could demonstrate that the transfer impaired its security.

In view of our resolution of this issue, we decline to discuss the remaining issue raised by plaintiff, whether the trial court erred in finding that it would be inequitable to permit plaintiff to assert the alleged violation of the due-on-sale clause, since plaintiff had accepted the terms of the substitute agreement consenting to the sale and there had been no default on that agreement.

Affirmed.

GREEN and WEBBER, JJ., concur.