## Richmond

GENERAL ELECTRIC CREDIT CORPORATION V. ELMER LUNSFORD, ET AL.

April 28, 1969.

Record No. 6855.

Present, All the Justices.

*Hampton W. Thomas* (*Apostolou, Place & Thomas*, on brief), for appellant.

*A. L. Larkum* for appellees.

SNEAD, J., delivered the opinion of the court.

Elmer Lunsford and Nellie Lunsford, husband and wife, appellees, filed a petition in the court below praying that the clerk of the court be directed, as provided by Code, § 55-66.5(b), to make a marginal release of a deed of trust on certain real property belong-

ing to them. They alleged that the right of anticipation was reserved in the deed of trust securing a negotiable note held by General Electric Credit Corporation, appellant, and that they made tender of the amount due under an exercise of that right, which tender General Electric refused to accept. The case was heard *ore tenus* on May 16, 1967, and by order dated June 3, 1967, the relief sought was granted. The case is before us on the following "Agreed Stipulation of Facts".

"Elmer R. Lunsford and Nellie Lee Lunsford, husband and wife, were the owners of a one acre tract of unimproved land, lying and being in South River District, Augusta County, Virginia, as evidenced by that certain deed dated October 24, 1960 and recorded in the Clerk's Office of the Circuit Court of Augusta County, Virginia in Deed Book 457, at page 539 on November 7, 1960.

"The said Elmer R. Lunsford and Nellie Lee Lunsford, husband and wife, conveyed the aforesaid property by deed of trust dated October 16, 1963, to Peter W. Runkle and/or William W. Woodward, Jr., both of Richmond, Virginia in trust to secure payment of one negotiable promissory note payable unto Le-Wood Homes, Inc., a Virginia Corporation [for] the sum of $16,383.88, payable in 144 monthly installments; 12 for $92.00, 12 for $97.00, 24 for $107.00, 95 for $120.29, and 1 for $120.33, beginning January 3, 1964, copy of deed of trust and note are hereto attached and made a part hereof. This was a first lien purchase money deed of trust for a shell home purchased from Le-Wood Homes, Inc. and was recorded in the aforesaid Clerk's Office in Deed Book 487, page 67 on November 6, 1963. The note was subsequently negotiated by endorsement to General Electric Credit Corporation, who presently holds said note, having purchased same by discount on December 12, 1963.

"The purchase amount of of (sic) $16,383.88 for the shell home was computed as follows: $9,200.00 principal; $7,137.88 being 6% add on rate for term of land [loan] and $46.00 for insurance coverage, a total of $16,383.88 representing total purchase price.

"By letter dated August 25, 1966, Lunsford was advised that payoff of his account was $13,366.88 and that the offer of this figure was good until September 3, 1966. By letter dated January 10, 1967 Mr. A. L. Larkum, attorney for Lunsford was advised that General Electric Credit Corporation had computed this payoff based upon the Rule of 78's or sum of the digits methods which is commonly used by companies in the field of discounting paper.

"By letter dated January 4, 1967 from General Electric Credit Corporation Complainant was quoted a pay-off of $9,487.07, based

upon $13,045.88 principal, $3563.41 refunds and $4.60 late charges.

"By letter dated February 2, 1967, Larkum tendered a certified check to General Electric Credit Corporation for $7,121.00 as payment in full. By letter dated March 8, 1967 he volunteered to forward an additional $200.96 to cover earned insurance premium conditional upon General Electric Credit Corporation's willingness to accept his offer of payment. By letter dated March 7, 1967, General Electric Credit Corporation refused this counteroffer and returned the check in the amount of $7,121.00 to Larkum. Demand was made for the balance due on the note.

"Larkum in this proceeding, moves this Honorable Court for judicial release of the said deed of trust in accordance with the provisions of the Code of Virginia § 55-66.5 (b) as amended.

"General Electric Credit Corporation demands the balance due upon its note in the amount of $13,045.88, being $16,383.88 less $3,338.00 paid by Lunsford, and requests this Honorable Court to rule as to the amount General Electric Credit Corporation is entitled to be paid as a condition precedent to the granting of the aforesaid judicial release as requested."

The deed of trust contains this provision:

"* * * This deed of trust is made under the provisions of Sections 55-59 and 55-60 of the Code of Virginia of 1950, and shall be construed to impose and confer upon the parties hereto, including the beneficiary hereunder, all of the duties, rights and obligations therein prescribed, including * * * right of anticipation reserved * * *."

Code, § 55-60(6) provides:

"The words *right of anticipation reserved*,' or words of like purport, shall be construed as if the deed set forth: 'The grantor reserves the right to anticipate the payment of the debt hereby secured, or any part thereof which is represented by a separate note (or other obligation) at any interest period by the payment of principal and interest to the date of such anticipated payment only.' "

Code, § 55-66.5, upon which the relief sought by the Lunsfords is based, reads:

"(a) Any person who owns or has any interest in real estate or personal property on which such encumbrance exists may, after twenty days' notice thereof to the person entitled to such encumbrance, apply to the circuit or corporation court of the county

or corporation in whose clerk's office such encumbrance is recorded or to the Chancery Court of the city of Richmond, if it be in the clerk's office of such court, to have the same released or discharged; and upon proof that it has been paid or discharged * * * such court shall order the same to be entered by the clerk on the margin of the page in the book wherein the encumbrance is recorded, which entry, when so made, shall operate as a release of such encumbrance.

\* \* \* \* \* \*

"(b) If it be made to appear to the court * * * that tender has been made of the sum due thereon but the same has been refused for any reason by the party or parties to whom due, the court may in its discretion order the sum due to be paid into court, to be there held as provided by law, and to be paid upon demand to the person or persons entitled thereto, and thereupon the court shall order the same to be recorded as provided in subsection (a) hereof, which entry shall operate as a release of the encumbrance."

The trial court advised counsel by letter that it had concluded that the deed of trust should be released upon payment of $7,321.96 to General Electric, the noteholder. The court did not state how it arrived at that figure. Thereafter, General Electric petitioned the court for a re-hearing, which was denied. By order entered June 3, 1967, the court found, among other things, that the Lunsfords had paid into court $7,321.96, that being the amount of principal and interest due as of February 2, 1967, the date of tender. It directed the clerk to make a marginal release of the deed of trust and to pay the amount deposited to General Electric.

General Electric first contends that under § 55-66.5 the trial court was without jurisdiction to determine "collateral issues extending beyond the four corners of the instruments". In support of its position, General Electric cites *Wagner v. Peters*, 142 Va. 412, 416, 417, 128 S.E. 445, 446 (1925), wherein it is stated that under the statute, "there is only a single fact to be established, that is, payment or discharge of the debt", and that "the statute cannot be construed to authorize the decision of such decisive collateral issues" as must arise in a determination of liability under a policy of insurance.

Sub-section (b) was added to § 55-66.5 subsequent to this decision. Sub-section (b) relates to tender and refusal of the sum due, while sub-section (a) relates to payment or discharge. The principle enunciated in *Wagner* excluding a determination of collateral issues from a proceeding under the statute applies with equal force to sub-

section (b). However, in the case at bar we are faced with no collateral issues. The right of anticipation is in the deed of trust itself and a determination of what amount constitutes the "sum due" under an exercise of that right is contemplated by the statute and is necessary to a determination of whether the "sum due" has been tendered, and cannot be termed "collateral".

█ General Electric further contends that it is a holder in due course of the note for which the deed of trust is security and as such is entitled to rely on the terms contained within the four corners of the note. It points out that the note on its face is a non-interest bearing installment note in the principal amount of $16,383.88 and says that it is entitled to that amount less $3,338.00 paid by the Lunsfords. A proceeding under § 55-66.5 is not an action on the obligation; it seeks only a release of the security, and a proper consideration is limited to the contract between the parties relating to the security. It is by this contract that the security is created and its nature and extent defined.

In *Shanabarger* v. *Phares*, 86 W. Va. 64, 68, 69, 70, 103 S.E. 349, 350, 351, several negotiable notes secured by a deed reserving a vendor's lien were negotiated to a holder in due course. The deed provided for an abatement in the purchase price of the real property in the event of a deficiency in acreage. There was no reference to this provision in the notes. A deficiency was thereafter discovered and a release of the lien was sought to the extent of the alleged abatement in the amount of the obligation. The holder in due course sought to enforce the lien for the face amount of the notes. The court held that the purchasers of the land were entitled to the benefit of the abatement provision. In speaking of the security agreement the court said:

"* * * It fixes the relative status of the land and the notes and the rights of the holder of the notes, respecting the land, whatever his right may be respecting the money called for by the notes * * *. Though the two papers are executed at the same time and closely related, they have different subjects and purposes and there is no rule of interpretation or construction, requiring them to be so treated as to affect either subject in a manner different from that intended by the parties or to defeat any of the purposes intended. * * * Being separate or at least separable, the note may and does confer one right and the security another. The former is governed by the law merchant and the latter by the law of real property and equitable rules and principles, * * *. Here we have under consideration a resort to the

security only, and the subject of inquiry is the extent to which the land is bound by the terms and provisions of the deed reserving the lien. * * * [W]e conclude that the holder of the notes involved can have no greater right respecting the land, than the deed reserving the lien confers by its terms properly interpreted, whatever its right may be, respecting the maker and endorsers thereof. The lien on the land is created and defined by the deed, not the notes. * * *"

General Electric is bound by the provisions of the instrument on which it relies and can have no greater interest in the land than that conferred by the instrument creating the security. The fact that General Electric might also be a holder in due course of a negotiable note for which the deed of trust is security does not extend General Electric's interest in the property beyond that granted by the deed of trust.[1]

That the right of anticipation exists in favor of the Lunsfords is apparent from the deed of trust itself, and under its terms is to be construed in accordance with the provisions of § 55-60. As has been stated, General Electric points out that the note, as described in the deed of trust, appears on its face to be a non-interest bearing instrument. It contends that the $7,137.88 item is not interest but represents the "time price differential" which was added to the cash price of $9200, plus $46 for insurance, to arrive at $16,383.88, the total "time price" for the purchase of the shell home from Le-Wood Homes, Inc.

Under the long established theory of "time price differential" the vendor of property may charge one price for immediate cash payment or a different price if payment is to be made at a future date or in installments. The former is the cash price, the latter the time price and the difference is the time price differential. Such a sum is not considered interest in the strict sense and may exceed an amount which, if considered interest, would be usurious. *Graeme* v. *Adams*, 64 Va. (23 Gratt.) 225, *Hogg* v. *Ruffner*, 66 U.S. 115, *Richardson* v. *C.I.T. Credit Corporation*, 60 Ga. App. 780, 5 S.E.2d 250. Although a time price differential is not interest for purposes of the usury statutes, under any interpretation it represents a charge for credit and we do not think that § 55-60 requires a construction so narrow as to exclude such charges from the term "interest". We do not mean to say that a note or deed of trust may not provide otherwise, but the instruments here involved did not.

(1) For a general discussion see Osborne on Mortgages, §§ 231, 232 and cases there cited.

General Electric says that if a rebate is required it should be computed in accordance with the Standard Rule of 78. In its supplemental brief filed it has voluntarily offered to rebate on this basis. While this method of computation is recognized by the General Assembly in cases of certain loans,[2] it is not mentioned in the note or deed of trust, nor is there any statutory requirement for its application to a first deed of trust on real property of the character here involved.

As has been said the trial court determined that $7,321.96 was the amount due as of February 2, 1967 for a release of the lien. Neither General Electric nor the Lunsfords have challenged the correctness of this figure if the Lunsfords were entitled to a pro-rata rebate of the credit differential. We hold that for the purposes of releasing the deed of trust they were entitled to a rebate on that basis. The question of the Lunsfords' remaining liability on the note, if any, is not before us and we do not decide that issue.

The judgment appealed from is

*Affirmed.*

Carrico, J., dissenting.

I would reverse the decree of the trial court and dismiss the petition because I am of opinion that Code § 55-66.5(b) is not applicable under the circumstances of this case to provide the relief sought in the petition.

I think the provisions of subsection (b) of Code § 55-66.5 are designed to provide relief only where the sum due upon an indebtedness clearly appears or is easily computable. I cannot conceive that the Legislature intended the Code section to apply to a situation where, as here, the court must inquire into and resolve the complicated and contested contractual undertakings of the parties in order to arrive at a sum due.

In *Turnbull* v. *Mann*, 94 Va. 182, 26 S.E. 510 (1897), and *Wagner* v. *Peters*, 142 Va. 412, 128 S.E. 445 (1925), this Court properly limited the application of subsection (a) of Code § 55-66.5 to those instances where actual payment or discharge of an indebtedness can be shown. I see no reason to extend the application of subsection (b) beyond those instances where the sum due upon an indebtedness is known or is readily ascertainable.

---

(2) Loans to natural persons by industrial loan associations and loans secured by mortgages or deeds of trust other than by first mortgages or deeds of trust except on residential property consisting of more than four family dwelling units. Code, §§ 6.1-234 and 6.1-330, as amended.